## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CONNIE OTERO,

       Plaintiff,

v.                                     CIV 99-616 KBM/RLP – ACE

UNM CARRIE TINGLEY HOSPITAL,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion For Summary Judgment Dismissing All Counts Of Plaintiff's Complaint *(Doc. 39)*. Plaintiff seeks recovery under Title VII of the Civil Rights Act of 1964 on her claims of national origin ("race") discrimination and retaliation.[1] *See* 42 U. S. C. § 2000e *et seq.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. Because I find Plaintiff has not come forward with any evidence that would support a finding that Defendant's legitimate reasons are pretextual, summary judgment will enter in favor of Defendant and this action will be dismissed with prejudice.

### I. Background

This is the third time Plaintiff and Defendant have been involved in litigation. Plaintiff was

---

[1] The parties seem to agree that these are the sole remaining claims. Plaintiff concedes that she abandoned her age and gender discrimination claims and that all claims against all individual defendants have been dismissed. *See Doc. 23; Memorandum at ¶ 1 & n.1; Otero Depo at 7-8; Response at 1, 23.*

hired as a Social Worker by the Hospital in July 1984.  She was terminated sometime during 1985.  In response, she pursued an administrative appeal of her discharge and also filed suit in this Court under Title VII.  The administrative appeal resulted in her reinstatement, she was awarded back pay in the federal action.  It is unclear from the record when this occurred.  *See Memorandum at ¶ 8, Response at 5, 8-9.*

Upon reinstatement, Plaintiff received her prior salary level.  She was not retroactively awarded an increase that had been given to her coworkers prior to her reinstatement.  Otero sued a second time in this Court to challenge this discrepancy in pay.  The suit was settled in early 1996.  Plaintiff received the same increases as her coworkers between 1995 and 1997.  *See Memorandum at ¶ 8, Response at 5, 8-9; CIV 95-842 SC/LFG.*

In June 1999, Plaintiff filed the instant action.  Her specific complaints fall into three categories:  (1) a former supervisor's decision to award her a 3% rather than 4% merit pay increase in May 1998; (2) the way in which her present supervisor handled situations where Plaintiff was accused of failing to properly carry out her work responsibilities; and (3) the less favorable performance evaluations given to her by the present supervisor.  *See Response.*

## II.  Analysis

### A.  Summary Judgment Standard

Plaintiff argues that under state summary judgment standards she need "only show that the evidence raises a genuine issue as to the material facts."  *Response at 18, nn.2-3.*  However, federal procedure standards govern this case.  *E.g., Villarini-Garcia v. Hospital Del Maestro, Inc.,* 8 F.3d 81 (1st Cir. 1993) ("Whether or not a case rests on diversity jurisdiction, the summary judgment standard is a matter of federal law, for it is settled that, broadly speaking, in a federal

court federal law determines the respective roles of trial judge, jury, and reviewing court.").

Under the federal standard, summary judgment is appropriate where, looking at the facts in the light most favorable to Plaintiff, there are no genuine issues of material fact and Defendant are entitled to judgment as a matter of law. Once Defendant meets its burden of establishing that no genuine issue exists, the burden shifts to Plaintiff to demonstrate a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Summary judgment must be entered against Plaintiff if she fails to make a showing sufficient to establish a factual dispute on an essential element of her case on which she bears the burden of proof at trial. *See id.*; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); FED. R. CIV. P. 56. In this context, "facts" include neither "[u]nsubstantiated allegations," *Phillips v. Calhoun,* 956 F.2d 949, 951 n.3 (10th Cir. 1992), nor "[o]ptimistic conjecture, unbridled speculation, or hopeful surmise," *Vega v. Kodak Carribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir. 1993).

**B.  Plaintiff Fails To Produce Sufficient Evidence That Would Lead A Reasonable Jury To Find Defendant's Proffered Legitimate Reasons Are Pretext**

**1.  Plaintiff's *Prima Facie* Case Presumed**

To prevail on a Title VII claims for racial discrimination or retaliation, Plaintiff must prove intentional discrimination by direct or indirect evidence. *E.g., Munoz v. St. Mary-Corwing Hosp.,* 221 F.3d 1160, 1166 (10th Cir. 2000); *Perry v. Woodward,* 199 F.3d 1126, 1135 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 1964 (2000). Plaintiff attempts to do so by indirect evidence.

To defeat a motion for summary judgment, Plaintiff must first demonstrate the she has a *prima facie* case. *E.g., Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). Though by

no means conclusively established on this record, for the purposes of argument, I will assume

Plaintiff has established a *prima facie* case of discrimination and retaliation.[2]  Therefore, under

*McDonnell Douglas,* the burden shifts to Defendant to come forward with evidence showing a

facially nondiscriminatory reason for the action it took.  *Id.* (citing *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802 (1973)).

### 2.  Defendant Identifies Legitimate, Nondiscriminatory Reasons For Each Incident And Plaintiff's Evidence of Pretext Is Mere Speculation

Plaintiff argues that each incident of which she complains evidences discriminatory motive

based on her Hispanic ethnicity and/or in retaliation for filing of charges with the New Mexico

Human Rights Commission on October 2, 1998.  Having reviewed the record in detail and, as

explained below, I find that Defendant met its burden of articulating a legitimate,

nondiscriminatory reason for each incident.  As such, the burden shifts back to Plaintiff to

---

[2]  Defendant asserts that the *prima facie* case for discrimination and retaliation is the same and that one element Plaintiff must show is that she "qualified for the position or [was] adequately performing the position."  *Memorandum at 14.*  However, the cases it cites in support of this proposition involve failure to hire and demotion situations, neither of which is involved here.  This case presents retaliation and disparate treatment and discipline claims.

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that: (1) she was engaged in protected activity opposing discrimination; (2) she was subjected to adverse employment action and; (3) that a causal connection exists between the adverse action and her protected activity.  *E.g., Pastran v. K-Mart,* 210 F.3d 1201, 1205 (10th Cir. 2000); *McGarry v. Board of County Comm'rs,* 175 F.3d 1193, 1201 (10th Cir. 1999).

To establish a *prima facie* case of disparate treatment based on national origin, plaintiff must show that:  (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) Defendant treated similarly situated employees differently.  *See Trujillo v. University of Colo. Health Sciences Ctr.,* 157 F.3d 1211, 1215 (10th Cir. 1998).  To establish a *prima facie* case of disparate discipline based on national origin, the elements are virtually identical. Plaintiff must show that:  (1) she is a member of a protected class; (2) she was disciplined by the employers; and (3) the employer imposed the discipline under circumstances giving rise to an inference of . . . discrimination.  One way to establish the third prong of the *prima facie* discipline case is to "show that the employer treated similarly situated employees differently."  *Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir. 2000).

demonstrate that the proffered reasons are pretextual either by showing the "'a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'" *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317 (10th Cir. 1999) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

> Pretext can be shown by such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations omitted).

Plaintiff fails to sustain her burden on pretext.  I note that Plaintiff's Response largely reiterates what is set forth in the affidavit of Plaintiff attached to the pleading.  Her affidavit sets forth certain "factual" events and wholly conclusory assertions that these incidents constitute retaliation or discrimination.  Her Response is primarily devoted to arguing that racism still exists and is hard to prove, she is a competent worker and asset to the Hospital, and she brought this suit in "defense" to what she perceives as "micromanagement and unfounded criticism" of her job performance by her present supervisor.  *Response at 22*.  The Response is utterly devoid of citation to authority, save for two state cases on summary judgment standards.

### (a)  1% Discrepancy In Merit Pay Increase

Based on her 1997 evaluation by then-Acting Supervisor Defendant Art Manzitto, apparently a Hispanic male, Plaintiff only received a 3% merit increase in May 1998 while her coworkers received a 4% increase.  Defendant explains that he gave her 1% less than the others because of a complaint from a client, Ms. Beck.  In a letter to the Hospital, Ms. Beck  complained that Plaintiff failed to return telephone calls or coordinate with her concerning a "respite"

placement of Ms. Beck's foster children in the hospital.  Just before Ms. Beck was due to leave town, a great deal of confusion and anxiety arose regarding the placement of the children.  In her own words and emphasis, Ms. Beck was "FURIOUS" at the way Plaintiff handled the situation. *See Memorandum at ¶ 8-13, Response at 6, 9-10; McGough Aff., Exh. 12.*[3]

Plaintiff does not dispute that the incident occurred or that Ms. Beck complained.  In her deposition, Plaintiff asserts that another employee who engaged in misconduct by throwing something (evidently a wad of paper money) at a coworker was not similarly given a lesser increase.  *Memorandum at ¶ 13.*  Yet, the alleged misconduct by the other employee can not reasonably be considered similar to that complained of by Ms. Beck because they were not of comparable seriousness.  The incident with the other employee was purely an internal matter and a dispute between two individuals that did not effect patients.  The Beck incident involved a patient and a written complaint to the Hospital about Plaintiff's job performance.  *See e.g., Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1232 (10th Cir. 2000) ("These events cannot be used to show pretext in Kendrick's case, however, because these employees did not violate work rules of comparable seriousness to Kendrick.").

Plaintiff also relies on a comment allegedly made by Mr. Manzitto in assigning her a lesser merit increase.  Plaintiff contends that Manzitto's statement that "he hoped she didn't think he was using 'garbage' from the past against her" indicates that "he was influenced by Ms. Otero's prior civil rights suits."  *Response at 10.*  However, this comment could be equally understood to indicate his sensitivity to Plaintiff's past concerns about compensation and an assurance that past litigation was not the reason for his giving her a 1% less increase.  Even if the statement could be

---

[3]  Plaintiff's Response mistakenly cites the pay raise as occurring in May 1999.

read as Plaintiff argues, a single isolated comment such as this one is insufficient to create a jury issue. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994).

While timing of the discrimination charge and an adverse employment action can be relevant, even close temporal proximity alone does not establish pretext. For example, the Tenth Circuit has held that a period of three months between complaining of discrimination and termination "suggests pretext, but is not sufficient by itself to raise an issue of fact." *Pastran,* 210 F.3d at 1206. Here, Plaintiff's second lawsuit had been settled probably more than a year and a half before the comment was made and her first lawsuit had been filed years before that time. As to the October 1998 charge before the New Mexico Human Rights Commission, Plaintiff alleges that the next adverse action took place six months later. Thus, there is no basis for making an inference of discrimination or pretext based on "close temporal proximity."

### (b) Ms. Clancy's Assertions of Misconduct/Discipline

Plaintiff takes issue with the way her present supervisor, Defendant Jennifer Clancy, an Anglo female, supervised Plaintiff's work. The first incident occurred on the first week Ms. Clancy became Plaintiff's supervisor. On either Tuesday, May 26, 1998 or the next day, Plaintiff spoke with Ms. Clancy and noted her dissatisfaction with Mr. Manzitto's decision to recommend that she be given only a 3% raise. Plaintiff attended an out-of-town seminar on Thursday and Friday.

The following Monday, Ms. Clancy advised Plaintiff that she would receive the 3% raise. Ms. Clancy also told Plaintiff that the Medical Records Supervisor sent Ms. Clancy a written complaint that Otero failed to provide a psycho social evaluation for a patient's record. Plaintiff complains that Ms. Clancy asked Plaintiff about the incident without first checking the patient's

record and refused Plaintiff's request that she accompany her right then to review the record.  *See Memorandum at ¶ 14; Response at 6, 11.*[4]

The second incident occurred one month later.  On June 4, 1998, Plaintiff failed to respond immediately to a page that was sent to her during her lunch hour.  She did not follow up following her lunch break because the person with whom she spoke did not "have the client's name or telephone number."   The next day Ms. Clancy advised Plaintiff that she should have responded to the page but did not discipline Plaintiff for the incident.  *See Memorandum at ¶ 15; Response at 11-12; McGough Aff., Exh. 6.*

In late 1998 one of Plaintiff's patients had not returned a bedside commode.  As a result, the medical supplier listed the commode as a purchase rather than a rental and was seeking reimbursement from the hospital for it.  In December, Ms. Clancy requested that Plaintiff follow up with the matter.  By February, the matter still had not been resolved and resulted in considerable confusion, including a mistaken but threatened collection action against the hospital foundation.  The commode was eventually located and the matter resolved.  Ms. Clancy issued a "written counseling" memorandum to Plaintiff regarding the incident.  *See Memorandum, ¶¶ 22-24; Response at 6;  McGough Aff., Exh. 9.*

On May 10, 1999, Ms. Clancy issued a verbal "reprimand" to Plaintiff for an incident involving her failure to "proactively"  manage a patient's treatment plan.  On May 23, 1999, Ms. Clancy issued a verbal "warning" to Plaintiff for her failure to arrange for transportation for a patient.  Plaintiff challenges both actions as unwarranted under the circumstances. *Memorandum*

---

[4]  Plaintiff does not claim that the query about the report is related to her complaint the prior week about her merit increase, but for the reasons stated above this mere temporality does not establish pretext.

*at ¶ 20; Response at 13-17; see also McGough Aff., Exh. 5.*

"Title VII is not violated by the exercise of erroneous or even illogical business judgment." *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 247 (10th Cir. 1993).  "[D]istrict courts, when analyzing the pretext issue, do not sit as 'super-personnel departments' free to second-guess the business judgment of an employer.  *Bullington,* 186 F.3d 1318 n.14.  "[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual."  *Hardy v. S.F. Phosphates L.C.,* 185 F.3d 1076, 1080 (10th Cir. 1999) (citing *Griannopolous v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 411 (7th Cir. 1997)).

Beyond the coincidences that Plaintiff is Hispanic and her supervisor is Anglo and that Plaintiff has a history of litigation with the Hospital, Plaintiff has not come forward with any facts to establish pretext other than that she disagrees with how these situations were handled.  For each of these instances, however, I find that the information leading to the intervention by Ms. Clancy came from an independent source and that Ms. Clancy had a legitimate basis as a manager to act as she did.  There is simply no basis for finding that Ms. Clancy's actions were motivated by the fact that Plaintiff is Hispanic or that she filed previous lawsuits or charges.  "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations omitted).

*(c)  Ms. Clancy's August 1998 and October 1999 Evaluations*

In August 1998, Ms. Clancy evaluated Plaintiff indicating that Plaintiff met certain job standards and needed improvement in the quality of her work and initiative.  *See McGough Aff.,*

*Exh. 1.*  Plaintiff disagreed with the evaluation because it "was totally subjective, based on preconceived beliefs and [was] totally inconsistent with the actual performance of her duties" because she had been rated as exceeding standards in prior evaluations.  *Response at 12-13; see also McGough Aff., Exh. 2.*  In response, Ms. Clancy revised certain ratings, but the overall rating was not changed apparently and Plaintiff remained dissatisfied because it was not as good a rating as past ones from a female Hispanic supervisor.  *See Memorandum at ¶ 19; Response at 12-13.* Plaintiff also asserts that Ms. Clancy did not handle her October 1999 evaluation properly because personnel received a copy of the evaluation before Ms. Clancy and Plaintiff had a chance to review it.  She disagreed with Ms. Clancy's evaluation on the merits as well, again based on her own assessment of her performance and because she only received a  "meets standards" ratings instead of the "exceeds standards" ratings she had received in prior evaluations from her Hispanic female supervisor.[5]  *Response at 17-18.*

"Prior performance evaluations do not, by themselves, establish that a later unsatisfactory evaluation is pretextual."  *Eilam v. Children's Hosp. Assoc.,* 1999 WL 176128 at * 4 (10th Cir. 1999) (unpublished) (citing Third and Seventh Circuit decisions).  Furthermore, and employee's "mere opinion that his performance had not changed since his prior evaluations is not enough to defeat summary judgment."  *Id.* at *4 (citing *Fallis v. Kerr-McGee Corp.,* 944 F.2d 743, 747 (10th Cir. (1991) and *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988)).

"It is the manager's perception of the employee's performance that is relevant, not

---

[5]  In her deposition, Plaintiff complained that Ms. Clancy called her at home on two occasions and once when away from the office.  Ms. Clancy ceased doing so after Plaintiff told her that it caused her "stress."   Plaintiff does not mention the telephone calls in her Response and, for the reasons set forth above, would not provide a basis for relief as a matter of law in any event.  *See Memorandum at ¶¶ 21-22; Response generally.*

plaintiff's subjective evaluation of [her] own relative performance." *Furr v. Seagate Tech, Inc.,* 82 F.3d 980, 988 (10th Cir. 1996), *cert. denied,* 519 U.S. 1056 (1997); *see also e.g., Kelley v. Goodyear Tire & Rubber Co.,* 220 F.3d 1174, 1178 (10th Cir. 2000). An employer's use of subjective criteria in evaluating employees "does not suffice to prove intentional . . . discrimination." *Furr,* 82 F.3d at 987. Plaintiff's "own opinions about her qualifications do not give rise to a material fact dispute" [and her] opinion about the fairness or accuracy of [Ms. Clancy's] evaluation is not evidence of pretext." *Bullington,* 186 F.3d at 1318.

### C.  Conclusion

While a *prima facie* case "combined with sufficient evidence of pretext is sufficient as a matter of law to show intentional discrimination," *Munoz,* 221, F.3d at 1167 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* ___ U.S., ___ 120 S.Ct. 2097, 2180-09 (2000)), here Plaintiff simply has presented no facts that would lead a reasonable jury to disbelieve Defendant's proffered legitimate reasons for doing what it did.

Wherefore,

**IT IS HEREBY ORDERED THAT:**

1.    Defendant's Motion for Summary Judgment *(Doc. 39)* is GRANTED;

2.    The jury trial set to commence November 13, 2000 in Albuquerque is VACATED; and

3.    A final order dismissing this action with prejudice enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE

For Plaintiff:        David S. Proffit

For Defendant:        Cheryl O'Connor and Elizabeth L. German